Capri *v.* Jafolla & Mark, Inc., Appellants.

Argued October 3, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Herbert A. Barton,* with him *C. Donald Swartz,* of *Swartz, Campbell & Henry,* for appellants.

*Victor Frey,* for appellee.

564

OPINION BY PARKER, J., November 20, 1935:

The plaintiff has a judgment against the defendant in an action in trespass brought to recover for damages to her residence, and defendant has appealed to this court complaining of the refusal of its motion for a new trial. The sole question involved concerns the measure of damages.

Caterina Capri, the plaintiff, was the owner of a three-story dwelling in the city of Philadelphia having a front of Indiana limestone, and the defendant was operating a pile driver in the street in front of the dwelling and negligently spattered oil stains over the stone front of the residence. The ownership of the building and the negligence of the defendant are not now in dispute.

Plaintiff offered evidence tending to show that Indiana limestone is porous and readily absorbs oil; that the stains could not be removed by any known process; and that it would be necessary to erect a new stone front at a cost of $2,475 in order to restore the property to its former condition. It was conceded that the cost of repairs was less than the value of the building. The defendant produced a witness who testified that the stains could be entirely removed by the application of direct heat against each stain at a total cost of $100. The jury accepted the testimony of plaintiff's witnesses and rendered a verdict for $2,475. The defendant attacks the competency of plaintiff's witnesses to express an opinion as to the only method by which the property could be restored and, in addition, insists that the testimony if received was not sufficient to support the finding of the jury.

It is well settled that the measure of damages applicable to a case of this kind is "the cost of repairing the damages and thus restoring the property to its former condition, unless such cost would equal or exceed the value of the building, in which case the value

of the building would be the measure of the plaintiff's damages": Gift v. Reading, 3 Pa. Superior Ct. 359, 366; Lentz v. Carnegie Bros. & Co., 145 Pa. 612, 23 A. 219; Helbling v. Cemetery Co., 201 Pa. 171, 50 A. 970; Durante v. Alba, 266 Pa. 444, 109 A. 796.

The plaintiff called a witness, Benjamin Hirsch, who testified that he had been engaged in the business of cleaning stone fronts, including Indiana limestone, by sand blasting for a number of years; that he had examined the front and found that the oil had penetrated so deep that the building could not be cleaned by that process. Another witness, William S. Trimble, was called, who stated his business was the manufacture of cut stone; that he inspected the property; that sand blasting or tooling would not restore the property; that he did not know of any process that would; and that owing to the great porosity of Indiana limestone it was necessary to discard such stone. He also testified that it would cost $2,475 to replace the front with a new limestone wall. On cross-examination he stated that he was engaged in the business of furnishing stone for the erection of buildings, manufacturing it, and erecting it in place, including limestone, granite, and marble; that nothing that he knew of would take out the oil stains; that owing to the depth of the penetration of the oil heat would spread the oil rather than remove it; and that he had experimented with the use of heat. He also stated that he was familiar with the process of cleaning stone by the use of acids and, notwithstanding his investigations, he had found no known method of removing the stains from Indiana limestone. Another witness, Donato Cipriano, testified that he had been in the granite, marble, and monumental work business and the cleaning of limestone fronts; that he had had experience in the handling of Indiana limestone and made an investigation of the plaintiff's property; that he was familiar with the different methods

of cleaning Indiana limestone; that it could not be repaired by sand blasting or tooling; and that the only way to restore the front was to take it down and erect a new wall.

The defendant called a witness, Fraser G. Swope, who testified that he was engaged in the business of restoring exterior masonry work and had been so engaged for nine years; that there were four methods of cleaning Indiana limestone, sand blasting, steam blasting, a hand method, and his own private process which consisted in the application of dry heat against each stain; that by the heat method the stains could be removed and the property restored to its former condition at a cost of $100.

We are of the opinion that the plaintiff's witnesses were competent to express the opinions which they gave. They included a manufacturer of stone who had been engaged in the business of supplying stones and erecting them in place in buildings, who was familiar with the characteristics of Indiana limestone and knew and had experimented with the methods used in removing oil stains. Another witness was engaged in the business of cleaning buildings by sand blasting, and another witness by the use of acids. These men had worked with stone and had been compelled to meet the same problems that are here presented. They testified not only that there was not a known process that would remove the oil stains, but fortified their opinions by evidence as to the porous character of Indiana limestone and the way in which it absorbed oil. Certainly these men were competent to express an opinion as to the efficacy of various methods of removing oil stains from Indiana limestone, and if there was a method that would accomplish this result they certainly should have known something of it. While the defendant offered a witness who stated that the oil could be removed by the use of heat, this was specifically denied by one of

plaintiff's witnesses. We are of the opinion that the witnesses offered by the plaintiff were competent to express the opinions which they gave and that the evidence, if believed, was sufficient to support a conclusion by the jury that it was necessary to remove the front in order to restore the building.

Judgment affirmed.